24CV022381-400

| | |
|---|---|
| AMY JOSEPH SHELTON, as Executor of the Estate of CAROL LINEBERRY, | |
| Plaintiff, | |
| vs. | **COMPLAINT** (Jury Trial Demanded) |
| THE MOODY BIBLE INSTITUTE OF CHIGAGO, an Illinois Not-For-Profit Corporation, | |
| Defendant. | |

NOW COMES Plaintiff Amy Joseph Shelton, as Executor of the Estate of Carol Lineberry, by and through undersigned counsel, complaining of Defendant, and alleges and says as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Amy Joseph Shelton ("**Amy**") is the duly appointed executor of the Estate of Carol Lineberry ("**Estate**"), which Estate is designated as file # 22-E-2753 in the Office of the Clerk of Superior Court for the County of Guilford.

2. Defendant The Moody Bible Institute of Chicago ("**MBI**") is an Illinois not-for-profit corporation with its principal place of business in Cook County, Illinois.

3. State Employees' Credit Union, the banking institution which manages the financial accounts which are the subject of this lawsuit, is situated in North Carolina.

4. This Court has jurisdiction over all the parties and matters in controversy herein, and they are properly before this Court pursuant to N.C. Gen. Stat. § 1-75.4.

5. Venue is proper in Gilford County pursuant to N.C. Gen. Stat. §§ 1-76 and 28A-3-1.

## FACTUAL ALLEGATIONS

6. On August 12, 2022, Carol Lineberry ("**Carol**") passed away from malignant neoplasm of tonsillar fossa (tonsil cancer). She was eighty-four (84) years old at the time.

7. Carol did not have a living spouse or any living lineal descendants at the time of her death.

8. Prior to her death, Carol had executed a Will on October 9, 2012 ("**Will**"). A copy of the Will is attached hereto as "**Exhibit A**" and is incorporated as if fully set out herein. The Will directed that Carol's residuary estate be given to her friend, Michael Stephen Shelton ("**Michael**"). In the event that Michael predeceased her, Carol left her residuary estate equally to Michael and Amy's two children, Michael Stephen Shelton II and Emma Clair Caroline Shelton (collectively referred to as "**Children**"). Carol also named Michael as the Executor of her Will, or his wife, Amy, in the event that Michael predeceased Carol.

9. On January 7, 2020, Michael passed away and thus predeceased Carol.

10. The Will was submitted to probate in Guilford County on September 26, 2022.

11. On October 21, 2022, Amy qualified as executor of the Estate and received Letters Testamentary.

12. Pursuant to N.C. Gen. Stat. § 28A-13-3(a)(24), as the personal representative of the Estate, Amy has the power to perform in a reasonable and prudent manner every act which a reasonable and prudent person would perform incident to collection and preservation of the Estate so as to accomplish the desired result of settling and distributing the Estate in a safe, orderly, accurate and expeditious manner as provided by law, including maintaining any appropriate action to recover possession of any property of Carol, or to determine the title thereto.

13. While locating assets of the Estate, Amy determined that Carol had various accounts with State Employees' Credit Union (collectively referred to as "**Accounts**"), to wit:

   a. IRA account
   b. Share (savings) account
   c. Checking account
   d. Money Market Share account

14. Amy obtained beneficiary designation forms for the Accounts which show that on or about October 12, 2021, Carol designated Defendant MBI as the sole beneficiary for the Accounts ("**Beneficiary Designation Forms**"). A copy of the Beneficiary Designation Forms are attached hereto as "**Exhibit B**" and are incorporated as if fully set out herein.

2

15. As of October 26, 2022, the Accounts contained in excess of $900,000.00.

16. Carol had a long and continuous relationship with Michael and his children. Even after Michael's death, Carol continued to maintain a relationship with his children.

17. In the months preceding the beneficiary designation of MBI on the Accounts, Carol suddenly and without warning or incident ceased communicating with Amy and the Children.

18. Upon information and belief, Carol had no connection to or relationship with MBI.

19. Amy spoke with Rebecca S. Martin ("**Ms. Martin**"), an employee of State Employees' Credit Union and the person who witnessed Carol's signature on the beneficiary designation forms for the Accounts. Ms. Martin told Amy that she felt that Carol was not in her "right mind" at the time of signing the Beneficiary Designation Forms.

## FIRST CAUSE OF ACTION
### (Declare Beneficiary Designation Void due to Undue Influence)

20. The preceding paragraphs are realleged and incorporated by reference as if fully set forth herein.

21. Upon information and belief, the Beneficiary Designation Forms were procured by undue influence in that the professed act of Carol was not her own but was, in fact, the act of another person exerting influence over Carol, namely Pat Buchanan (formerly Pat Matthews) ("**Pat**").

22. But for the acts of Pat, Carol would not have executed the Beneficiary Designation Forms.

23. The undue influence acted upon the free will of Carol at the time she executed the Beneficiary Designation Forms.

24. Carol was unduly influenced as evidenced by several facts and circumstances, to wit:

   a. Upon information and belief, Carol was suffering from mental weakness at the time she executed the Beneficiary Designation Forms;

   b. The beneficiary designation on the Accounts is different from the express terms of Carol's Will, and essentially disinherited her intended heirs;

3

c. The beneficiary designation was made in favor of one with whom Carol had no ties of blood or even a familial relationship or friendship; and

   d. Amy and the Children had little or no opportunity to see or speak with Carol in the months leading up to Carol's execution of the Beneficiary Designation Forms.

25. As a direct and proximate result of MBI being designated a beneficiary on the Accounts at a time when Carol was unduly influenced to do so, Plaintiff has been damaged in an amount to be proven at trial but believed to be greater than Twenty-Five Thousand Dollars ($25,000.00).

## SECOND CAUSE OF ACTION
**(Declare Beneficiary Designation Void due to Lack of Mental Capacity)**

26. The preceding paragraphs are realleged and incorporated by reference as if fully set forth herein.

27. Carol did not have the sufficient mental capacity to designate MBI as a beneficiary of the Accounts on or about October 12, 2021, because she lacked sufficient mental capacity to understand:

   a. What she was conveying;
   b. The person to whom she was conveying;
   c. The purpose for which the conveyance was made; and
   d. The nature, scope and consequences of her act.

28. As a direct and proximate result of MBI being designated a beneficiary on the Accounts at a time when Carol lacked mental capacity to do so, Plaintiff has been damaged in an amount to be proven at trial but believed to be greater than Twenty-Five Thousand Dollars ($25,000.00).

WHEREFORE, Plaintiff prays the Court that:

1. The beneficiary designation of MBI on the Accounts be declared void due to undue influence;

2. The beneficiary designation of MBI on the Accounts be declared void due to lack of mental capacity;

3. Plaintiff have and recover attorney's fees as allowed by law;

4. The costs of this action be taxed against Defendants; and

5. For such other and further relief as the Court deems just and proper.

4

This the 8th day of October, 2024.

*R. Kenneth Helms, Jr.*
Bar No. 15891
HELMS LAW GROUP, P.A.
Post Office Drawer 99
Monroe, NC 28111
Telephone: (704) 289-4577
Fax: (704) 283-1122
*Attorney for Plaintiff*

5

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

## WILL OF CAROL LINEBERRY

I, CAROL LINEBERRY, of GUILFORD COUNTY, NORTH CAROLINA, declare this to be my Will and revoke all earlier wills and codicils.

### ARTICLE I
### DISPOSITION OF ESTATE

A. <u>Gift of Tangible Personal Property</u>. All my tangible personal property that was not held by me solely for investment purposes, including, but not limited to, my automobiles, household furniture and furnishings, clothing, jewelry, collectibles and personal effects, shall be disposed of as follows:

1. I give all such tangible personal property to my friend MICHAEL STEPHEN SHELTON if my friend MICHAEL STEPHEN SHELTON survives me.

2. I may leave a writing which, although not a part of my Will, expresses my desires concerning the disposition of my tangible personal property. I request, but do not require, that my wishes as set forth in any such writing be observed.

3. The costs of safeguarding, insuring, packing, storing and delivering my tangible personal property to any beneficiary under this Paragraph shall be paid as expenses of administration.

B. <u>Gift of Residuary Estate</u>. I give my residuary estate, being all my real and personal property, wherever located, not otherwise effectively disposed of, to my friend MICHAEL STEPHEN SHELTON if my friend MICHAEL STEPHEN SHELTON survives me, if not, then I give my residuary estate IN TRUST to the Trustee named below to be disposed of in accordance with the provisions of Article II of this Will.

### ARTICLE II
### DISPOSITION OF TRUST PROPERTY

A. <u>Retention in Trust or Distribution Outright</u>. The property payable to the Trustee as a result of my death, including any property given to the Trustee under this Will, shall be divided by the Trustee into two (2) equal shares to be disposed of as follows:

Page 1 of the Will of Carol Lineberry



1. **The First Equal Share.** The Trustee shall distribute the First Equal Share to my friend MICHAEL STEPHEN SHELTON II if my friend MICHAEL STEPHEN SHELTON II is then-living and has attained at least twenty-five (25) years of age. If my friend MICHAEL STEPHEN SHELTON II is then-living but has not yet attained at least twenty-five (25) years of age, then the Trustee shall hold said Equal Share IN TRUST in a separate trust to be established for the benefit of my friend MICHAEL STEPHEN SHELTON II in accordance with the provisions of that Paragraph of this Article entitled "Trust for Beneficiary under Age Twenty-Five (25)." If my friend MICHAEL STEPHEN SHELTON II is not then-living, then said Equal Share shall be added to the Second Equal Share created under this Paragraph A of Article II of this Will; and,

2. **The Second Equal Share.** The Trustee shall distribute the Second Equal Share to my friend EMMA CLAIRE CAROLINE SHELTON if my friend EMMA CLAIRE CAROLINE SHELTON is then-living and has attained at least twenty-five (25) years of age. If my friend EMMA CLAIRE CAROLINE SHELTON is then-living but has not yet attained at least twenty-five (25) years of age, then the Trustee shall hold said Equal Share IN TRUST in a separate trust to be established for the benefit of my friend EMMA CLAIRE CAROLINE SHELTON in accordance with the provisions of that Paragraph of this Article entitled "Trust for Beneficiary under Age Twenty-Five (25)." If my friend EMMA CLAIRE CAROLINE SHELTON is not then-living, then said Equal Share shall be added to the First Equal Share created under this Paragraph A of Article II of this Will.

3. **Identification of Trust Beneficiaries.** For purposes of identification, my friends MICHAEL STEPHEN SHELTON II and EMMA CLAIRE CAROLINE SHELTON are the children of my friends MICHAEL STEPHEN SHELTON and AMY JOSEPH SHELTON.

B. **Trust for Beneficiary Under Age Twenty-Five (25).** Trust property to be held in a separate trust for the benefit of a beneficiary in accordance with these provisions of this Article shall be held in a separate trust for the benefit of said beneficiary to be administered as follows:

1. Until the beneficiary reaches the age of twenty-five (25) years or sooner dies, the Trustee shall withdraw from any Deferrable Retirement Benefit the Minimum Required Distribution for such Deferrable Retirement Benefit for each year, plus such additional amount(s) from any Deferrable Retirement Benefit as the Trustee determines in its discretion, and shall distribute all amounts withdrawn from any Deferrable Retirement Benefit (net of expenses properly chargeable thereto) to the beneficiary. The Trustee may distribute all or any portion of the remaining trust property (meaning trust property other than a Deferrable Retirement Benefit) to the beneficiary in such amounts and at such times as the Trustee, in the Trustee's discretion, may determine.

2. When the beneficiary reaches the age of twenty-five (25) years, the Trustee shall distribute the then remaining trust property to the beneficiary. If the beneficiary dies before reaching such age, then upon the death of the beneficiary, the Trustee shall distribute the then-remaining trust property to the estate of the beneficiary.

C. <u>Other Provisions Regarding Disposition of Trust Property</u>. The following provisions relate to the trust property of any trust under this Will when and to the extent that the distribution of the trust property is within the discretion of the Trustee:

1. As a guide to the Trustee and without limiting the Trustee's discretion, it is my desire that such discretion be exercised for such purposes as the Trustee shall deem reasonable and appropriate for the welfare, enjoyment and education of the beneficiaries. The Trustee may take into consideration other financial resources of the beneficiaries but is not required to do so.

2. The Trustee, in the Trustee's discretion, may add any undistributed income to the principal of the trust from time to time.

D. <u>Spendthrift Provisions</u>. The interest of any beneficiary in either income or principal of any trust under this Will shall not be alienated or in any other manner assigned or transferred by such beneficiary, voluntarily or involuntarily, and such interest shall be exempt from execution, attachment, sequestration, distress for rent, and other legal or equitable process that may be instituted by or on behalf of any creditor, assignee or spouse of such beneficiary. Any trust created under this trust instrument shall be a spendthrift trust.

E. <u>Limitations on Distributions for Trustee's Personal Benefit</u>. As provided in Section 36C-8-814(b) of the General Statutes of North Carolina,

1. If the trust confers upon a Trustee the power to make discretionary distributions to, or for the personal benefit of, a Trustee that, except for that Section, would constitute in whole or in part a general power of appointment, such Trustee may exercise the power only in accordance with an ascertainable standard as defined in Section 36C-1-103(2) of the General Statutes of North Carolina.

2. A Trustee may not exercise a power to make discretionary distributions to satisfy a legal obligation of support that such Trustee personally owes another beneficiary of the trust.

F. <u>Limitations on Distributions of Retirement Benefits</u>. Notwithstanding any other provision hereof, except as provided in this paragraph, the Trustee may not, after September 30 of the calendar year following the calendar year of my death, or such earlier date as shall be established by the IRS regulations or other guidance as the final date for determining whether this trust meets the requirements for treatment of the trust's beneficiaries as if they had been named directly as beneficiary of any retirement plan payable to this trust ("Such Date"), distribute to or for the benefit of my estate, any charity or any other nonindividual any Deferrable Retirement Benefit. It is my intent that all Deferrable Retirement Benefits held by or payable to this trust as of Such Date be distributed to or held for only individual beneficiaries, within the meaning of IRC 401(a)(9). Accordingly I direct that no Deferrable Retirement Benefit may be used or applied after Such Date for payment of my debts, taxes, expenses of administration, or other claims against my

estate; nor for payment of estate, inheritance or similar transfer taxes due on account of my death. This paragraph shall not apply to any bequest or expense that is specifically directed to be funded with Deferrable Retirement Benefits by other provisions of this instrument.

## ARTICLE III
## PAYMENT OF DEBTS, EXPENSES AND DEATH TAXES

A. <u>Payment of Debts and Expenses</u>. All my debts, health care expenses, funeral and burial and/or cremation expenses and the administration expenses of my estate shall be paid out of my residuary estate. I authorize my Executor, in my Executor's discretion, to spend more than is otherwise allowed by law for a suitable gravestone (if any) and for perpetual care of the lot upon which my grave (if any) is located.

B. <u>Payment of Death Taxes</u>. All death taxes (other than death taxes which are paid from property passing outside of this Will pursuant to the terms of the governing instrument) shall be paid out of my residuary estate as an administration expense and shall not be charged against or recovered from any recipient or beneficiary of the property taxed, except that my Executor shall recover as provided by law any death tax attributable to property (i) over which I have a power of appointment, (ii) in which I have a qualifying income interest for life or (iii) in which I have a retained interest for life to the extent that any death tax recoverable by law is not otherwise paid out of such property.

## ARTICLE IV
## THE FIDUCIARIES

A. <u>Appointment of Executor</u>. I appoint my friend MICHAEL STEPHEN SHELTON to be my Executor, but if my friend MICHAEL STEPHEN SHELTON fails or ceases to act for any reason, then I appoint my friend AMY JOSEPH SHELTON to be my Executor. If it becomes necessary for a representative of my estate to qualify in any jurisdiction other than the State of North Carolina in which my Executor shall be unable or unwilling to qualify as Executor, then my Executor shall have the right to appoint an individual or corporate representative of my estate in such jurisdiction.

B. <u>Appointment of Trustee</u>. I appoint my friend JERRY M. HARMON to be the Trustee of any trust established by this instrument. The Trustee shall have the right to resign without court order at any time in a writing signed by the Trustee, such resignation to be effective upon the acceptance of the trusteeship by a successor Trustee. If a Trustee gives notice of resignation, becomes incapacitated, or otherwise ceases to act as Trustee and no successor Trustee named above is available and willing to serve as the successor Trustee, then the outgoing Trustee shall (unless removed for cause) have the right to appoint a successor Trustee in writing (including a testamentary instrument making specific reference to this power of appointment) who is either a corporate Trustee or an individual Trustee who has attained the age of thirty (30) years.

C. <u>Waiver of Bond and Court Supervision</u>. No bond or other security shall be required from my Executor unless otherwise required by law. The Trustee shall not be required to give bond or other security notwithstanding the authority of the court to require bond. Any fiduciary may act without qualifying before any court or filing with any court any inventory, accounting or other report relating to the administration of my estate or any trust unless otherwise required by law to do so.

D. <u>Compensation of Fiduciary</u>. An individual Fiduciary may receive that compensation for such Fiduciary's services which is allowed by law at the time the services under this Will are rendered. A corporate Fiduciary shall receive payment for its services in accordance with its schedule of rates in effect at the time such compensation becomes payable, without reduction, except to the extent required by applicable law, for any other fees or other compensation paid to the corporate Fiduciary or an Affiliated Entity, including, but not limited to, such fees or other compensation paid by any open-end or closed-end investment company, unit investment trust or other investment vehicle, or an agent.

## ARTICLE V
## ADMINISTRATIVE POWERS OF FIDUCIARIES

It is my intention that in addition to all other powers conferred by law or elsewhere in this Will, (i) my Executor shall have all the powers and authority conferred upon personal representatives by Article 13 of Chapter 28A of the General Statutes of North Carolina and (ii) the Trustee shall have all the powers and authority conferred upon the Trustee by the North Carolina Uniform Trust Code, Chapter 36C of the General Statutes of North Carolina, including, without limitation, the authority to invest subject to the prudent investor rule. To the extent they may not be conferred by law, I grant to my Executor and the Trustee the discretionary powers set forth below to be exercised without court order for any purpose that my Executor or the Trustee may deem advisable.

A. <u>Powers Incorporated by Reference</u>. With respect to my Executor, subject to Section 32-26 of the General Statutes of North Carolina, all of the powers set forth in Section 32-27 of the General Statutes of North Carolina as they exist at the time that I sign this Will, and such powers are incorporated by reference with the same effect as though set out verbatim in it.

B. <u>Possession and Disposition of Real Property</u>. With respect to my Executor, the power to take possession, custody and control of real property owned by me at the time of my death, even though title to such real property is not devised to my Executor, and to sell, exchange, give options upon, partition, lease, mortgage or otherwise dispose of any such real property.

C. <u>Distributions to or for the Benefit of a Beneficiary.</u> Whenever authorized or directed to distribute property to a beneficiary, whether or not under a legal disability, the power to distribute such property, unless otherwise directed, (i) directly to such beneficiary, including the transfer of property into such beneficiary's name by depositing cash or registering securities in his or her name, (ii) to a custodian or custodial trustee for such beneficiary under a uniform gifts or transfers to minors act or uniform custodial trust act, including a custodian or custodial trustee designated by the fiduciary, which may be the fiduciary, (iii) to the guardian or conservator of such beneficiary's estate, or (iv) to any other person, firm or institution for the benefit of such beneficiary, and the receipt of any of the foregoing shall constitute a full acquittance of the fiduciary to the extent of the distribution so made.

## ARTICLE VI
## PRESUMPTION OF SURVIVORSHIP

For purposes of this instrument, if any beneficiary should die within a period of thirty (30) days after the date of my death, it shall be conclusively presumed that such beneficiary predeceased me.

## ARTICLE VII
## DEFINITIONS

For purposes of this instrument,

A. <u>"Executor," "Trustee" and "Fiduciary."</u> The term "Executor" or "Executors" includes any personal representative or representatives of my estate acting under this Will such as a successor Executor or Executors and any Administrator with the Will annexed. It also includes the term "Executrix" whenever the context requires it. The term "Trustee" or "Trustees" includes any Trustee or Trustees acting under a trust to which property passes pursuant to this Will, and the term "fiduciary" or "fiduciaries" includes both an Executor and a Trustee.

B. <u>"Death Taxes."</u> The term "death taxes" means inheritance, estate, transfer and succession taxes, and any interest and penalties on these taxes, imposed by reason of my death by any jurisdiction with respect to property passing under or outside of the provisions of this Will or any codicil to it which is includible in my estate for the purpose of determining such tax, including, but not limited to, any tax on property includible under section 2036 (relating to transfers with retained life estate), section 2041 (relating to powers of appointment), section 2042 (relating to life insurance proceeds) or section 2044 (relating to qualified terminable interest property) of the Internal Revenue Code of 1986, as amended, or any comparable provision of state law, but excluding, however, any tax imposed by section 2032A(c) (relating to qualified real property), or chapter 13 (relating to generation-skipping transfers) of the Code, or any comparable provision of state law.

C. "Child," "Children" and "Issue." The terms "child" and "children" mean lawful lineal blood descendants in the first degree of the parent designated, and the term "issue" means lawful lineal blood descendants in any degree of the ancestor designated, but such terms shall include any person legally adopted prior to the time that person reaches the age of eighteen (18) and the lawful lineal descendants of any such person, whether of the blood or by adoption prior to such age. Notwithstanding any other provision hereof or of state law, a person's "issue" shall not include an individual who is such person's "issue" by adoption if such individual (1) was so adopted after my death and (2) is older than the oldest other beneficiary (who was living at my death) of any trust created by this Will.

D. "Per Stirpes." Whenever a distribution is to be made to, or a division into shares is to be made for, a designated ancestor's issue who are living at a designated time, and such distribution or division is to be made "per stirpes," such distribution or division shall be made by first determining the generation nearest to such ancestor which has a person who represents that generation and who is living at the designated time. The property to be distributed or divided shall be divided into as many equal shares as may be necessary to allocate one share to each then living person of that generation and one share to each deceased person of that generation who left issue who are then living. Each living person of that generation who has not effectively disclaimed his or her share for federal tax purposes shall receive one share, and the share of each deceased person of that generation and of each living person of that generation who has effectively disclaimed his or her share shall be divided among his or her then living issue in the same manner.

E. "Trust Property." Unless the context indicates otherwise, references to "trust property" mean the net undistributed income and principal of the trust.

F. "Retirement Benefit." The term "retirement benefit" refers to an interest in one of the following types of assets if payable to a trust as beneficiary or as owner of the asset: a qualified or nonqualified annuity, a benefit under a qualified or nonqualified plan of deferred compensation, any account in or benefit payable under any pension, profit-sharing, stock bonus, or other qualified retirement plan, any individual retirement account or trust, any and all benefits under any plan or arrangement that is established under _ 408, _ 408A, _ 457, _ 403, _ 401, or similar provision of the Internal Revenue Code. "Retirement Benefits" shall refer to all such interests collectively.

G. "Deferrable Retirement Benefits" shall refer to any Retirement Benefit that meets the following two requirements: First, it is subject to the Minimum Distribution Rules. Second, the trust has the option (either under the terms of the plan or arrangement that governs such Benefit, or by transferring the Benefit to an inherited IRA) to take distribution of such Benefit in annual installments over the life expectancy of the oldest beneficiary. Benefits payable under a plan or arrangement that is not subject to the Minimum Distribution Rules (such as, under current law, a "nonqualified deferred compensation plan") are not Deferrable Retirement Benefits.

H. "Minimum Distribution Rules" shall refer to the rules of Section 401(a)(9) of the Code, including the Regulations thereunder.

I. "Minimum Required Distribution" for any year means, for each Retirement Benefit: (1) the value of the Retirement Benefit determined as of the preceding year-end, divided by (2) the Applicable Distribution Period; or such greater amount (if any) as the Trustee shall be required to withdraw under the laws then applicable to this Trust to avoid penalty. Notwithstanding the foregoing, the Minimum Required Distribution for the year of my death shall mean (a) the amount that was required to be distributed to me with respect to such Benefit during such year under the Minimum Distribution Rules, minus (b) amounts actually distributed to me with respect to such Benefit during such year.

J. "Applicable Distribution Period" shall be given the same meaning provided to the term under the Minimum Distribution Rules.

K. "MICHAEL STEPHEN SHELTON" shall refer to the husband of my friend AMY JOSEPH SHELTON.

L. "MICHAEL STEPHEN SHELTON II" shall refer to the son of MICHAEL STEPHEN SHELTON.

I, CAROL LINEBERRY, the Testatrix, sign my name to this instrument this 9 day of October, 2012, and being first duly sworn, do hereby declare to the undersigned authority that I sign and execute this instrument as my last Will and that I sign it willingly (or willingly direct another to sign it for me), that I execute it as my free and voluntary act for the purposes therein expressed, and that I am eighteen years of age or older, of sound mind, and under no constraint or undue influence.

*[signature]*
CAROL LINEBERRY

Page 8 of the Will of Carol Lineberry

Case 1:24-cv-00940-LCB-JEP    Document 2    Filed 11/12/24    Page 13 of 17

We, __Elecia G Satterfield__, __Jamie L. Claude__ and, the witnesses, sign our names to this instrument, being first duly sworn, and do hereby declare to the undersigned authority that the Testatrix signs and executes this instrument as the Testatrix's last Will in our presence and that the Testatrix signs it willingly (or willingly directs another to sign it for the Testatrix), and that each of us, at the request of the Testatrix, and in the presence and hearing of the Testatrix, and in the presence and hearing of each other, hereby signs this last Will as witness to the Testatrix's signing, and to the best of our knowledge the Testatrix is eighteen years of age or older, of sound mind, and under no constraint or undue influence.

_____
(Name)

Greensboro, NC
(Residence)

_____
(Name)

Brown's Summit, NC
(Residence)

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

Subscribed, sworn to and acknowledged before me by CAROL LINEBERRY, the Testatrix, and subscribed and sworn to before me by __Jamie Claude__ and __Elecia G Satterfield__, witnesses, this __9th__ day of __October__, 2012.

(SEAL)

John R Hemphill
NOTARY PUBLIC
Wake County, NC
My Commission Expires 9/24/2016

SIGNED

_____
JOHN R. HEMPHILL, Notary Public

My Commission Expires: 9/24/2016

Page 9 of the Will of Carol Lineberry

## State Employees' Credit Union
## Designation of Beneficiary/Adoption Agreement Form
## for Tax Advantaged/Health Savings Accounts

### Account Owner Information

| Name | Tax ID Number | DOB |
|---|---|---|
| CAROL LINEBERRY | [redacted] | [redacted] |

| Account Type | Account Number | Account Address |
|---|---|---|
| Beneficiary IRA | [redacted] | 4354 ROCKY BROOK CT GREENSBORO NC 27409-8907 |

### Primary Beneficiary Selection(s)

| Name | Relationship to Owner | Tax ID/Other | DOB | Percentages Share | Per Stirpes | Address |
|---|---|---|---|---|---|---|
| Moody Bible College | Charity | [redacted] | | 100.00 | No | 820 LaSalle Blvd Chicago NC 60610 |

### Contingent Beneficiary Selection(s)

No Contingent Beneficiaries selected.

### Beneficiary Designations

I hereby designate the above as primary or contingent beneficiary(ies) of this account. If I name more than one beneficiary but do not specify a percentage to which they are entitled, the designated beneficiaries will receive equal shares. In the event the percentages at each beneficiary level are greater or less than 100%, the credit union shall reallocate each beneficiary's interest on a pro-rata basis, so that the interests on each beneficiary level total 100%. In the event that I list percentages for some beneficiaries but not others, the undesignated interest shall be split evenly between all beneficiaries for whom a percentage was not listed. If neither primary nor contingent is checked, the named individual or entity will be deemed a primary beneficiary. I revoke all prior account beneficiary designations, if any, made by me. I understand that I may change or add beneficiaries at any time by completing, signing and delivering a new beneficiary designation to the credit union. If any primary beneficiary dies before me, his or her interest shall be allocated among the remaining primary beneficiaries on a pro-rata basis, unless the deceased primary beneficiary has a Per Stirpes designation. If there are no remaining primary beneficiaries, the interest shall be allocated among the contingent beneficiaries, unless a deceased primary beneficiary has a Per Stirpes designation. If any contingent beneficiary dies before me, his or her interest shall be allocated among the remaining contingent beneficiaries on a pro-rata basis, unless the deceased contingent beneficiary has a Per Stirpes designation. If there are no remaining beneficiaries, the interest will pass to my estate. Per Stirpes Designations: Per Stirpes is an optional designation. For purposes of this beneficiary designation form, if Per Stirpes is elected for a particular beneficiary, and that beneficiary dies before me, I understand that the deceased beneficiary's interest shall be allocated equally to his or her surviving sons and daughters. I further understand that if I choose a Per Stirpes designation, it shall be the responsibility of my personal representative to provide the credit union with proof of the death of the named beneficiary and the names and addresses of any persons entitled to the deceased beneficiary's interest. If my personal representative fails to do so by September 30th of the year following the year of my death, or if there are no surviving sons or daughters of the deceased beneficiary, the interest shall be allocated as if no Per Stirpes designation had been made.

### Adoption Agreement

I understand the eligibility requirements for the type of deposit I am making and I state that I do qualify to make the deposit. Unless this is a beneficiary IRA, I acknowledge that I have received a copy of the 5305 Plan Agreement and Disclosure Statement and I understand the terms and conditions which apply to this account. I also agree to be bound by those terms and conditions. I understand that unless I am opening a Health Savings Account or a Coverdell Education Savings Account, I can revoke this account without penalty by mailing or delivering a written notice to the credit union within seven (7) days of the account opening date. I assume complete responsibility for:
1. Determining my eligibility for any contributions to this account.
2. Insuring that all contributions I make are within the limits set forth by the tax laws.
3. Accepting any tax consequences resulting from distributions or ineligible contributions (including rollover contributions).

x _Carol L. Lineberry_ 10-12-21
Account Owner's Signature     Date

x _Rebecca S. Martin_ 10-12-21
Witnessed By (Cannot be Beneficiary) Signature     Date


IRB13951070

Branch Name: Greensboro - West Market Street    Created By: S00631N on 10/12/2021 at 14:26


EXHIBIT B

**ACCOUNT SERVICES FORM**  Branch #: **5**  Branch Name: Greensboro W Market
The reason for this ASF: Other (Designations, etc.)   Second Reason:

### A: Choose Credit Union: 001 - State Employees' Credit Union

### B: Choose Type of Ownership: Payable on Death - POD    Secondary Ownership Type: Individual

### C: Accounts

| Account | Type | Cycle | Acct# |
|---|---|---|---|
| ☒ SHARE account | Type: 201 - Regular Share | | [redacted] |
| ☒ CHECKING account | Type: 002 - Dividend Checking | Select Cycle | [redacted] |
| ☒ MONEY MARKET SHARE account | Type: 003 - Money Market Share | Select Cycle | [redacted] |
| ☐ CASHPOINTS GLOBAL account | Type: 010 - CashPoints Global | | |
| ☐ TAX-ADVANTAGED account | Type: | | |
| ☐ ADDITIONAL type account | Type: | Please select account type | |

### D: STC

| STC Account | STC Amount | Term/Months | Option | STC/Cash Club Transfer To Acct # |
|---|---|---|---|---|
| | | | | |

### E-G: Ownership

| | PRIMARY | SECONDARY | OTHER |
|---|---|---|---|
| Name: | Carol Lineberry | Moody Bible Institute | |
| Designation: | Member | POD Beneficiary | |
| Date of RLT/IRT: | | Date of Death: | Date of Death: |
| SSN/TIN: | [redacted] | [redacted] | |
| Birth Date: | | | |
| Employer/Dept: | retired  Dept#: 00998 | Dept#: | Dept#: |
| Phones: | (W)  Ext:  (H) [redacted] | (W) Ext:  (H) (C) (877) 376-2194 | (W) Ext:  (H) (C) |
| Mailing Address: | 4354 Rocky Brook Ct  Greensboro NC 27409 | 820 LaSalle Blvd  Chicago IL 60610 | |
| Residence Street Address (if diff): | | | |

Additional "Other" Information

### H - DEBIT CARD

Issue Card to Authorized User? (CashPoints Global accounts only)   No
☐ Issue card listed below to PRIMARY member with voice response.   Security Questions: Bypass
Card Type:   Plastic Design:
☐ Issue card listed below to SECONDARY member with voice response.  Security Questions:
Card Type:   Plastic Design:
☐ Add this account(s) to existing card(s) listed below
☐ Add other account(s) to existing card(s) below.

| Type | Account | P or S | Type | Account | P or S | Type | Account | P or S |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

PRIMARY CARD #:    SECONDARY CARD #:

### I - SECU FOUNDATION - CPG & Checking Accts Only
☐ Donation of $1 to SECU Foundation DECLINED (normal service charges apply) Member initials:

### J - OVERDRAFT TRANSFER SERVICE (OTS) - Checking Accts Only
☐ Add OTS to the checking account(s)     ☐ OTS DECLINED - Member initials:
Primary Overdraft Account:  Type:   Account #
Secondary Overdraft Account:  Type:   Account #
LO/ VP/ SVP INITIALS (for loan overdraft)
☐ Add account # _____ as ☐ Primary or ☐ Secondary OTS for checking account #

ACCOUNT SERVICES FORM
PRIMARY NAME: Carol Lineberry
PRIMARY SSN: 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

### K – PAYROLL DEDUCTION

| PAYD Dept | PAYD SSN | Effective Date | Skip Mo | Type | Account | Amount |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

### L – FUNDS TRANSFER

| A,C or D | Seq # | AP | Credit Account | AP | Debit Account | Freq. | Amount | First Date | Expire Date | Occurrence |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

### M – SIGNATURES

Previously Signed Account Form/Card   Account Number

I (or we) as depositor(s) have received and read a copy of the Rules and Regulations governing this account and these services and agree to adhere to same. It is agreed that any and all accounts which I (or we) now have or may at any future time have which reference this account will be governed by this signature authority. With respect to joint accounts (all of which have the right of survivorship), any of us has the full power and authority to authorize any additional accounts which reference this signature authority. I (or we) also certify that I (or we) am eligible for membership in the Credit Union and that the ownership of the account(s) being requested is valid under the current bylaws of the Credit Union.

With respect to Joint Accounts: We understand that by establishing a joint account under the provisions of North Carolina General Statute 54-109.68 that: 1. The Credit Union may pay the money in the account to, or on the order of, either or any of the depositors named in the account; and 2. Upon the death of one joint owner, the money remaining in the account will belong to the surviving joint owners and will not pass by inheritance to the heirs of the deceased joint owner or be controlled by the deceased joint owner's will. We DO elect to create the right of survivorship in this account.

With respect to Payable on Death (POD) Accounts: I (or we) understand that by establishing a Payable on Death account under the provisions of North Carolina General Statute 54-109.57A that: 1. During my (or our) lifetime I (or we), individually or jointly, may withdraw the money in the account; and 2. By written direction to the Credit Union, I (or we), individually or jointly, may change the beneficiary or beneficiaries; and 3. Upon my (or our) death, the money remaining in the account will belong to the beneficiary or beneficiaries, and the money will not be inherited by my (or our) heirs or controlled by will.

With respect to Personal Agency Accounts: I (or we) understand that by establishing a Personal Agency account under the provisions of North Carolina General Statute 54-109.63 that the agent named in the account may: 1. Sign checks drawn on the account; and 2. Make deposits into the account. I (or we) also understand that upon my (or our) death, the money remaining in the account will be controlled by the will or inherited by the heirs of the last account owner to die, OR released to any POD beneficiary(ies), if a POD account. I (or we) elect to extend the authority of my (or our) Personal Agent to act on my (or our) behalf in regard to the account notwithstanding my (or our) subsequent incapacity or mental incompetence.

With respect to Uniform Transfer to Minors Accounts: I, as custodian, understand that I am establishing a Uniform Transfer to Minors account under the provisions of North Carolina General Statutes, Chapter 33A, the North Carolina Uniform Transfers to Minors Act.

Under penalties of perjury, the depositor(s) certifies that I (or we) am a U.S. person (including a U.S. resident alien). I (or we) further certify that the tax payer identification number (TIN) listed for this account and for any accounts I (or we) now have or may have at any future time have which reference this account is correct for the depositor and that the depositor is not subject to backup withholding either because the depositor has not been notified that the depositor is subject to backup withholding as a result of a failure to report all interest or dividend, or the Internal Revenue Service has notified the depositor that the depositor is no longer subject to backup withholding. The Internal Revenue Service does not require the depositor's consent to any provisions on this document other than the certifications required to avoid backup withholding.

X_____ X_____ By initialing here and signing below, I am applying for a credit card account. By doing so, I (Two initials, if joint) authorize the Credit Union to verify my employment, income and any other information I have provided and to obtain a current credit report. I understand that after review of this information, additional information may be requested to complete the application process.

Total Income: $_____   Credit Limit Requested: $_____

✓ _Carol Lineberry_    Date 10-12-21    ✓ _____    Date ____
Member

✓ _____    Date ____    ✓ _____    Date ____

### N – UTMA CUSTODIAL RELEASE

To be used only if young adult is eligible for membership and funds in this account(s) will be maintained at the Credit Union in young adult's name. Otherwise, UTMA Custodian should close account(s) and give funds to young adult. Young Adult's Date of Birth: ____
As UTMA custodian for the account(s) listed on the reverse under the North Carolina Uniform Transfers to Minors Act (GS Chapter 33A), I hereby release all funds in the account(s) to the young adult in whose name the account(s) was originally established.

✓ _____    ✓ _____
(UTMA Custodian's signature)    (Date Released)

Note to FSO: If the young adult is eligible for membership in the Credit Union, then this account(s)'s ownership can now change to *Individual* with full membership rights in the Credit Union. (Young adult must sign ASF as new member).

### O – CREDIT UNION CHECK LIST

**Boxes Must Be Manually Checked (✓)**    Completed by _R. Martin_   Date: 10-12-21

- ☐ Rules & Regs Brochure Given?
- ☐ Deposit Rate Summary Given?
- ☑ Name/Address Set(s) Updated?
- ☐ SSNs Updated?
- ☐ Name Keys Updated?
- ☐ Card Maintenance Keyed?
- ☐ Security Questions Keyed?
- ☐ New Card(s) Ordered?

- ☐ Statement Maintenance (M100)? STMT#
- ☐ New Check Order Keyed?
- ☐ IRA Beneficiary Signed & Keyed?
- ☐ IRA Disclosures Given?
- ☐ 6305-C completed for HSA?
- ☐ 6305-EA completed for CESA?
- ☐ 6305-SEP completed for SEP-IRA?
- ☐ RLT/IRT Account Rules completed?

- ☐ Overdraft Keyed?
- ☐ Parent/Guardian Signed, if needed?
- ☐ Direct Deposit Offered?
- ☐ UTMA Successor Custodian Witness?
- ☐ Authorized User Form completed for CashPoints Global?

SECU Witness for UTMA Successor Custodian designation: _____

- ☐ FT Keyed?
- ☐ PAYD Keyed?
- ☑ PODB Keyed?
- ☐ PRFO Keyed?

[ Done! ]   [ Reprint ]   [ New ASF? ]   [ More Forms ]   [ Instructions ]

After processing, please scan this form using the ASF Backlog batch class. Please scan any supporting documentation directly behind this ASF.